NOT FOR PUBLICATION                                                                       CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOMINICK FAZZOLARI, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 12-1309 |
| v. | **OPINION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | February 18, 2014 |
| Defendant. |  |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of the Social Security Administration pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

## I.   BACKGROUND

### a. Vocational Background

      Plaintiff Dominick Fazzolari is a 67-year-old man who was born in Oppido Mamertina, Italy and then immigrated to the United States. (Tr. 102.) He completed a seventh-grade education at the Perth Amboy school district in New Jersey, and then entered an apprenticeship in New York City to become a barber. (Tr. 29, 38-39.) Since 1965 he has worked as a barber and stylist. (Tr. 129.)  He and his wife owned a salon called Maria's Hair Studio in Piscataway, New Jersey.  (Tr. 37, 129.)  In March 2006, however, the businesses was sold. (Tr. 50-51.)  He alleges

that he has not engaged in any substantial gainful activity since March 7, 2006. (Tr. 13.) At that time, he contends that he experienced a relapse involving substance abuse and psychological disorders, stopped working as a barber, and sold the salon. (Tr. 20.)

### b. Relevant Medical Background

(1) Alleged Psychological Impairments

Plaintiff's alleged disability is based primarily upon purported psychological impairments involving substance abuse and schizoaffective disorder/mood disorder. (Tr. 13.) Additionally, he stated in his disability application that he suffered from depression and anxiety. (Tr. 128.)

Plaintiff has battled drugs and alcohol for most of his life. (Tr. 20.) This included years of using cocaine, crack cocaine, and speed. (Id.) He also admits to severely abusing alcohol, drinking between one and four pints of vodka daily. (Tr. 17.) During drug and alcohol use, Plaintiff reported experiencing paranoid ideation, auditory hallucination, and thoughts about self-harm. (Tr. 17.) To treat these issues, he entered into two different drug rehabilitation programs, one in 2005, and the other, in 2007, primarily for alcohol abuse.[1] (Tr. 17, 233, 257.) At the time of the administrative hearing, he had been drug free for three weeks and had been sober for six days. (Tr. 17.)

Plaintiff's treating medical providers at the University of Medicine and Dentistry of New Jersey (UMDNJ) diagnosed mood disorder. (See Tr. 295, 300.) Dr. Jack Baharlias, consultative examiner for the Department of Labor and Workforce Development Division of Disability Determination Services, filed a report on June 19, 2007 diagnosing Plaintiff with a mood

---

[1] Plaintiff's medical records are available from Endeavor House, the 2005 drug rehabilitation facility. (Tr. 233-256.) The second rehabilitation facility, Open Door, provided no medical records for the Plaintiff's time there in 2007. (Tr. 257-58.)

2

disorder and polysubstance dependence.  (Tr. 259-62.)  Dr. Baharlias found that Plaintiff "demonstrated psychomotor retardation, extreme slowness in verbal responses . . . inattentiveness, [and] distractibility . . . ." (Tr. 18.)  He noted memory problems, inability to focus, inability to socialize with others, disorganized thought process, and poor judgment.  (Tr. 18-19.)  Similarly, state agency medical consultant Dr. Michael D'Adamo examined Plaintiff in July 2007 and concluded that Plaintiff had a possible cognitive disorder, depressive disorder, and substance addiction disorder. (Tr. 19.) This manifested itself as "marked limitations in his abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance . . . [and] get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 19.) Dr. D'Adamo found, however, that Plaintiff did not have a medically determinable impairment that qualified for disability under Listing 12.03 (schizophrenic, paranoid and other psychotic disorders).  (Tr.  267-69); see 20 C.F.R. § 404, Subpt. P, App. 1.  A May 2009 mental status exam found Plaintiff "cooperative," "fully oriented," and "able to refocus."  (Tr. 19.)  Administrative Law Judge ("ALJ") Donna A. Krappa noted the difference in Plaintiff's behavior: "[i]t is obvious from a review of the record that, once claimant ceased active drug and alcohol addiction, his mental health status greatly improved."  (Tr. 20.)

      (2) Alleged Physical Impairments

At the administrative hearing before the ALJ, Plaintiff claimed that he had physical pain in his back caused by a herniated disk; left arm pain caused by carpal tunnel; and pain (whistling) in his lungs.  (Tr. 35, 41.)

Regarding his back pain, Plaintiff reported that he was "very in pain" at the hearing, (Tr.

3

40), and that the reason he claimed he was unable to work was "lower back" pain, (Tr. 20.) He stated that he experienced a herniated disk in 2009. (Tr. 16.) He claimed that he could walk no more than one and one-half blocks without pain and could stand for no more than 15 minutes without pain. (Tr. 20.) He further reported difficulty holding a comb to style hair. (Id.) Plaintiff explained that there was no particular injury that caused his back pain, but that he believed it was a result of years of standing. (Tr. 43.) He has not taken any pain medication for his back. (Tr. 41.)

     Plaintiff stated that he had been treated for this pain by a chiropractor, Kevin Gall, D.C. The ALJ noted that there were no records provided regarding the diagnosis and treatment of Plaintiff's back pain, and no evidence in the form of x-rays, MRI studies, or EMG/NCSs.[2] (Tr. 16.) The ALJ expressed concern that, without this information, she would be unable to make a proper assessment of whether there was suitable work for Plaintiff in the national economy. (Tr. 53.) Instead, she stated she would delay making a determination until she received the medical records and gave counsel the opportunity to follow up with additional records showing a herniated disk or other impairment. She also offered to conduct a supplemental hearing on Plaintiff's physical pain and suggested the possibility of ordering an orthopedic consultation. (Tr. 37.) Counsel stated that he would speak with Plaintiff's doctors and submit records related to Plaintiff's back pain. (Tr. 54.) After the hearing, Plaintiff submitted additional evidence related to his back pain on Sept. 30, 2009, which consisted of a one-paragraph "Initial Consult" – a description by Dr. Gall on Oct. 16, 2008. (Tr. 483-84.) This October 2008 report reiterated Plaintiff's subjective report of pain. (Tr. 484). It also showed "decreased range of motion of the lumbar sacral spine with antalgia [and] positive Lasague's [sic] test," as well as abnormal gait.

---

[2] Electromyogram and Nerve Conduction Studies. These tests measure the electrical activity of the muscles and nerves.

(Tr. 484.)  Plaintiff did not request a supplemental hearing or orthopedic consultation. In assessing whether Plaintiff was disabled based on his claimed back pain, the ALJ noted that the only medical evidence regarding claimant's pain was Dr. Gall's initial consultation. (Tr. 16.)

Plaintiff also claimed that he experienced carpal tunnel syndrome and had limited range of motion in his left wrist.  (Tr. 35-36.)  He described the pain as located in his left wrist, hand, arm, and thumb, which made it difficult to hold a comb in his hand. (Tr. 45.)  He contends that he wears a brace for the pain about two to three times per week for a duration of one hour or more. (Tr. 46.)  He admitted that he had never received an examination of his wrist, nor did he provide medical documentation regarding this alleged impairment.  (Tr. 36.)  He stated, however, that his general practitioner, Yeow Tong, MD, prescribed pain medication for his wrist in October 2008. (Tr. 36.)

Finally, Plaintiff claimed that his lungs "whistle," or make a strange noise after he smokes cigarettes.  (Tr. 41-42.)  Plaintiff did not submit any further information related to this issue or allege the condition was associated with any functional limitation.

### c. Procedural History

Plaintiff filed an application for disability benefits on January 19, 2007, claiming disability since March 7, 2006.  (Tr. 58.)  His application was denied initially on July 12, 2007, and denied upon reconsideration on April 15, 2008.  (Tr. 57-58, 60.)  After Plaintiff requested administrative review, ALJ Krappa held a hearing on July 15, 2009, at which Plaintiff appeared with counsel and testified.  (Tr. 13.)  The ALJ considered the case de novo, and on February 24, 2010, found that Plaintiff was not disabled because he could perform work existing in significant numbers in the national economy.  (Tr. 13-23.)  Plaintiff appealed the ALJ's determination to the

Appeals Council, which found no grounds for review on January 6, 2012.  Plaintiff filed this action on March 2, 2012, seeking review of the Commissioner's final decision.

## II. STANDARD FOR A FINDING OF DISABILITY

The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is any "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A person does not qualify for disability if alcoholism or drug addiction is a contributing factor in whether an individual is disabled.  42 U.S.C. § 423(d)(2)(C).

An individual will only be considered disabled "if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

### a. Five-Step Analysis

When determining disability claims, the Commissioner applies a five-step analysis.  20 C.F.R. §§ 404.1520, 416.920.  The steps proceed as follows:

<u>Step One: Substantial Gainful Activity.</u>  The Commissioner must first determine whether the claimant is presently employed, and whether that employment constitutes substantial gainful activity.  20 C.F.R. § 416.972.  Substantial activity is work "that involves doing significant

6

physical or mental activities." 20 C.F.R. § 416.972(a).  Gainful activity is any work "that you do for pay or profit."  20 C.F.R. § 416.972(b).  If the Commissioner concludes that an individual is substantially and gainfully employed then that person cannot be disabled, regardless of age, education, or work experience.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not employed in substantial gainful activity, then he or she must show the existence of a severe impairment.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one which "significantly limits your physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  If the claimant does not present a severe impairment, or combination of impairments considered severe, then he or she will not be found disabled.  Id.

Step Three: Listed Impairment.  If the claimant proves the existence of a severe impairment, the Commissioner then determines whether that impairment meets or equals a listed impairment in Appendix 1 of 20 C.F.R. § 404, Subpt. P.  20 C.F.R. § 416.920(d).  If the impairment is found to meet or equal one of the listed impairments, then the claimant is disabled.  Id.

Step Four: Residual Functioning Capacity (RFC). In Step Four the Commissioner must determine whether, despite the claimant's impairment, the claimant still possesses the residual functional capacity[3] to perform his past relevant work.  20 C.F.R. § 416.920(e).  If so, the claimant will be found not disabled.  If not, the Commissioner moves on to the fifth and final step.  20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work.  If the claimant has not been found disabled in any of the

---

[3] RFC is the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC assessment is not a decision as to whether a claimant is disabled, but is used to determine the particular types of work a claimant may be able to perform despite his impairment(s).  See 20 C.F.R. § 416.945.

7

previous steps, the Commissioner must then consider the claimant's RFC, age, education, and past work experience to determine whether he can make an adjustment to other work. 20 C.F.R. § 416.920(g). If not, the claimant is found disabled. Id.

This five-step analysis has a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The burden rests on the claimant in the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). However, the burden shifts to the Commissioner in the fifth step to prove that the claimant is able to adjust to other work. Id.

### b. The ALJ's Decision

ALJ Donna Krappa evaluated Plaintiff's claim, finding that Plaintiff had a severe impairment and could not perform past relevant work, but could adjust to other work in the national economy. (Tr. 16-22.) In Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 7, 2006, his alleged onset date. (Tr. 16.) At the second step, the ALJ found that Plaintiff's substance abuse and schizoaffective disorder/mood disorder were severe impairments. (Tr. 16.) At Step Three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1. (Tr. 16.) At Step Four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but should be limited to simple, unskilled, and repetitive jobs that do not require working in close proximity to others, with at most occasional contact with coworkers and the general public in order to avoid distraction. (Tr. 18-21.) From these findings, the ALJ determined that Plaintiff could not perform his past relevant work as a barber. (Tr. 21.) Turning to Step Five, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy. (Id.) Therefore, the ALJ concluded that Plaintiff was not disabled. (Tr.

22.)

## III. STANDARD OF REVIEW

This Court must review the ALJ's factual findings to determine whether the administrative record contains substantial evidence for such findings.  42 U.S.C.A. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).  "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."  Snee v. Sec'y of Health and Human Servs., 660 F. Supp. 736, 739 (D.N.J. 1987) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)).

## IV. DISCUSSION

### a. Issues Properly Before the Court

As a preliminary matter, the Court must address which arguments are properly before it. A plaintiff challenging the Commissioner's final decision regarding disability benefits is required to file a statement "setting forth Plaintiff's primary contentions or arguments as to why plaintiff believes that he or she is entitled to relief." L.Civ.R. 9.1(d)(1).  Instead of listing those arguments over which Plaintiff sought review as required by the rule, Plaintiff submitted a letter

referring the Court and opposing counsel to "my Appeals Council memo." (Pl.'s 9.1 Ltr., ECF No. 7.)  Under the Rule, a plaintiff seeking disability review by a district court must then submit a brief, which "shall contain: . . . a statement of the issues presented for review; . . . argument [which] shall be divided into sections separately treating each issue and must set forth Plaintiff's arguments with respect to the issues presented and reasons therefore." L.Civ.R 9.1(e)(5).  Plaintiff's brief discussed one issue only: the adequacy of the ALJ's hypothetical question to the vocational expert (which the Court shall address infra).  He did not assert any other "issue presented for review" nor did he "set forth Plaintiff's arguments with respect to" any other issue, but instead referred the Court and counsel to the Appeals Council memo, requesting that "the AC memo be made part of this pleading." (Br. in Supp. of Pl. 11, ECF No. 9.)

     Noting that arguments made to the Appeals Council are not within the scope of the Court's review, the Commissioner argued that the Court should not consider arguments omitted from Plaintiff's brief but submitted to the Appeals Council.  (Def.'s Br. Pursuant to L.Civ.R. 9.1 5-6, ECF No. 10.) Defendant further asserted that only the ALJ's opinion was reviewable as the Commissioner's "final decision."  (Id.)  The Court acknowledged this deficiency in an Order dated September 5, 2012, and permitted Plaintiff an opportunity to refile his brief to include within the scope of review any other arguments. (ECF No. 11) ("[B]ecause [Plaintiff's brief] simply refers the Court to Plaintiff's memorandum to the Appeals Council instead of setting forth Plaintiff's reasons and arguments," the Court "ordered that Plaintiff file a revised Brief" to bring these issues within the scope of review.)  Plaintiff was aware of what the Court ordered, requesting a week extension to incorporate these additional arguments into the revised brief.  He stated that, because the Court did not "consider [the Appeals Council] memo in lieu of repetitions [sic] formal brief . . . I must respectfully request an additional 7 days since I simply

cannot produce the document ordered in the time allotted." (Ltr. from Pl., ECF No. 12.) The Court granted this request. (ECF No. 13).

When Plaintiff submitted his revised brief, however, the only change that Plaintiff made to the brief was an alteration to his argument regarding the ALJ's vocational hypothetical - the sole issue he argued in the original brief. Plaintiff did not raise any other issue for review. Nor did he brief any issue apart from the sufficiency of the vocational hypothetical. (See Revised Br. in Supp. of Pl., ECF No. 14.) Plaintiff was on notice of the consequences of failure to bring additional arguments within the scope of review. (See ECF Nos. 10, 11). Both the Court and his adversary advised him of such consequences and in response he requested additional time to incorporate these arguments. He did not. The Court deems all arguments, other than the sufficiency of the vocational hypothetical, strategically abandoned based on Plaintiff's decision not to brief the issues. See Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 88 (3d Cir. 1987) (issue not addressed in brief is deemed waived for the purposes of review); Simmons v. City of Philadelphia, 947 F.2d 1042, 1065 (3d Cir. 1991) ("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations."). Consequently, the only issue subject to review is the adequacy of the hypothetical question the ALJ posed to the vocational expert.

### b. Hypothetical Question Posed to the Vocational Expert

After an ALJ has concluded that a claimant is impaired and can no longer perform prior relevant work, the ALJ must decide, in Step Five, whether claimant can adjust to perform other work available in the national economy. 20 C.F.R. § 416.920(g). If not, the claimant is disabled.

Id.

*1. Use of Hypothetical Questions in Step Five*

In Step Five, the Commissioner bears the burden of proof to show that suitable work exists in the national economy for a person with claimant's limitations. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).  One method of proving that suitable work exists is through the testimony of a vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands . . . as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). Testimony of a vocational expert constitutes substantial evidence for the purpose of judicial review when the hypothetical question encompasses all of a plaintiff's impairments which are supported by the medical record. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). "'[G]reat specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." Id. at 554-55 (citing Burns v. Barnhart, 312 F.3d 113, 122 (3d Cir. 2002)). Thus, to provide substantial evidence, the hypothetical question must "'accurately portray' the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

Here, the ALJ posed several hypothetical questions to the vocational expert, Rocco J. Meola.  Meola has nearly 47 years of experience in vocational rehabilitation, (Tr. 98), and is currently employed as President of a community rehabilitation facility in New Jersey, (Tr. 97). He was present at Plaintiff's July 2009 administrative hearing for all testimony. (Tr. 29, 40.)  At

12

the conclusion of the hearing, the ALJ was concerned that Plaintiff had not submitted sufficient medical documentation to support his physical pain, and therefore, chose not to ask Meola any questions until she received Plaintiff's documentation. (Tr. 52-54.) After Plaintiff provided supplemental records relating to his physical pain, the ALJ posed the following hypothetical question to Meola via interrogatory:

> Please assume an individual of the claimant's age, education, and work history, and further assume that this person is able perform work at all exertional levels; however, because of psychological symptoms, this person is limited to jobs: that are simple, unskilled and repetitive; that require no work in close proximity (within 3-5 feet) to others in order to avoid distraction; and that require only occasional contact with the co-workers and the general public.

> (Tr. 219.)

In response to this hypothetical, Meola answered that suitable jobs existed in the national economy that would accommodate Plaintiff's limitations. (Tr. 219.) He listed four representative occupations: "microfilm mounter, collator operator, assembler (production), and hand presser." (Tr. 21.) Based on Meola's testimony that 40,000 such jobs existed in the national economy and 1,400 existed in the regional economy, the ALJ found that there existed a significant number of suitable jobs in the national economy. (Tr. 21.) The ALJ added an additional limitation for the second hypothetical: "the individual is only able to concentrate and focus for 1/3 of the work day." Responding to the second hypothetical, Meola found that no suitable work would existed in the national economy. (Tr. 220.)

### 2. Plaintiff's Challenges to the ALJ's Question

Plaintiff asserts that the ALJ erred because the hypothetical question posed to the vocational expert allegedly did not contain: (A) the limitations identified by Plaintiff's

13

psychiatric doctors; (B) Plaintiff's Global Assessment of Functioning Score ("GAF"); or (C) incorporate the ALJ's finding of "marked" limitations.

### (A) Psychiatric Testimony

Plaintiff argues that the hypothetical to the vocational expert omitted limitations "even though dispassionate, unbiased psychiatric doctors . . . describe the plaintiff as having 'a very impaired concentration and attention and poor judgment.'" (Pl.'s Br. 9). Plaintiff did not identify these doctors and provided no citation in his brief to the administrative record to support the claim that psychiatric doctors described Plaintiff as having these limitations. The quoted testimony does not exist in the record. The ALJ did, however, note that Dr. Baharlias's findings included that Plaintiff's "[i]nsight and judgment are poor." (Tr. 19.) Plaintiff has not submitted any argument as to how this corresponds to a functional limitation not covered by the hypothetical's language that Plaintiff "is limited to jobs: that are simple, unskilled and repetitive." The Court finds that the hypothetical question accurately conveyed the above-described limitations.

### (B) Incorporation of GAF Score

Next Plaintiff argues that his GAF score should have been included in the hypothetical posed to the vocational expert. But a "GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." Gilroy v. Astrue, 351 F. App'x 714, 715-16 (3d Cir. 2009) (citing 66 Fed. Reg. 50764–5 (2000)). Moreover, a hypothetical "need not frame the claimant's impairments in the specific diagnostic terms used in

14

the medical reports, but instead should capture the concrete consequences of those impairments." England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007); Calabrese v. Astrue, 358 F. App'x 274, 277 (2d Cir. 2009).  Plaintiff cites no specific functional consequence associated with Plaintiff's GAF score not already covered by the hypothetical. Nor does he cite any legal authority that requires that the "ALJ mention the claimant's GAF." (Pl.'s Br. 11.)

(C) Whether the ALJ Included All of Plaintiff's Credible Limitations

Plaintiff claims that the ALJ erred in failing to include several limitations in the hypothetical question posed to the vocational expert. Plaintiff asserts that the ALJ found "marked" limitation in his ability to "sustain concentration, persistence and pace."  He contends that the ALJ's hypothetical was not sufficiently specific when it noted that Plaintiff experienced "psychological symptoms" which limited him to "jobs[] that are simple, unskilled and repetitive" and that he was prone to "distraction."

When posing a hypothetical question to a vocational expert, an ALJ may use a functional phrase to describe the consequences of claimant's limitations rather than describing the evidence of the limitation. See Calabrese, 358 F. App'x at 277.  The Court, however, must assess whether the phrase accurately describes claimant's limitations. See  Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (analyzing whether specific deficiencies "were accounted-for in the phrase used in the hypothetical"); Lucas v. Barnhart, 184 F. App'x 204, 208 (3d Cir. 2006) (analyzing whether phrase was a "functional equivalent").  The Court must consider both whether the phrase is accurate, see Lucas, 184 F. App'x at 208, as well as whether it is complete, Burns, 312 F.3d at 121-23.  In Burns the Third Circuit considered whether the phrase, "simple repetitive" labor was sufficiently specific, and found that the phrase did not adequately encompass the claimant's

15

"borderline range of intellectual functioning," "developmental delay" and "scattered or loose . . . understanding." Burns, 312 F.3d at 121, 123. The Burns Court did not rule out that the phrase "simple repetitive" labor might adequately and accurately describe a different subset of limitations. Id. (distinguishing Howard v. Massanari, 255 F.3d 577 (8th Cir. 2001)). Regarding the limitations at issue here – "deficiencies in concentration, persistence, or pace" – the Third Circuit has found that the phrase "simple tasks" does not sufficiently encompass limitations in concentration or pace, Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), whereas the phrase "routine task" may be sufficient to convey difficulties with concentration, persistence or pace, depending on the severity. McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008).

In Ramirez, the ALJ asked a vocational expert whether there were jobs in the national economy for an individual who requires employment that "involve[s] simple one to two step tasks." 372 F.3d at 554 n.3.  The Court found that this functional phrase did not adequately encompass all of the limitations the ALJ identified because it was not sufficiently specific as to claimant's "deficiencies in concentration, persistence, or pace."  Id. at 554. This is because pace does not necessarily correlate with simplicity, in that an individual with difficulty keeping pace may be able to do simple jobs but unable to meet daily production quotas to keep his job.  See id. Thus, the limitation in the hypothetical of "simple tasks" would not necessarily cover all of claimant's limitations, including difficulty with pace.  On the other hand, the Third Circuit has determined that the phrase "routine tasks" does encompass some limitations on pace and concentration. McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (hypothetical limiting claimant to "routine tasks" was sufficient to account for "moderate limitations [in claimant's] ability to maintain concentration, persistence, and pace"). The Court reasoned that "routine tasks" or "unskilled work" typically refers to work that "does not require maintaining sustained

concentration." Menkes v. Astrue, 262 F. App'x 410, 412 (3d Cir. 2008) (hypothetical including the limitation "simple routine task[s]"or "unskilled jobs" adequately accounted for difficulties in "concentration, persistence, and pace"); Russo v. Astrue, 421 F. App'x 184, 192 (3d Cir. 2011) (quoting 20 C.F.R. Part 404, App. 1, Listing 12.00(C)(1)).

Unlike in Ramirez, where "[t]he only limitations [in the hypothetical] that relate to [claimant's] mental impairments are the limitations to simple tasks, the restriction on travel, and the phone privileges," Ramirez, 372 F.3d at 554, here, the ALJ included far more than that the task must be "simple." Instead, she described Plaintiff's impairments as limiting him to "simple, unskilled and repetitive" tasks and, moreover, incorporated into the hypothetical Plaintiff's difficulty with "distraction." The ALJ was particularly specific with respect to "concentration, persistence, and pace" by noting in her hypothetical that, "because of psychological symptoms, this person is limited to jobs . . . that require no work in close proximity . . . to others in order to avoid distraction" and that he could only have "occasional contact with the co-workers and the general public." (Tr. 219.) The Court finds that the ALJ's use of the phrase "unskilled" and "repetitive" labor, in conjunction with noting Plaintiff's tendency toward "distraction" and the need to limit interaction with others to occasional contact, accurately described the functional consequences of Plaintiff's limitations. See Russo v. Astrue, 421 F. App'x 184, 192-93 (3d Cir. 2011) (affirming ALJ's use of hypothetical that limited claimant to tasks with "simple instructions," minimal "contact with the public," and no quota to fulfill, adequately accounted for difficulties in concentration, persistence and pace).[4]

---

[4] Plaintiff also argues that the ALJ erred because she failed to consider the vocational expert's answer to the second hypothetical – whether jobs exist for someone who was only capable of concentrating 1/3 of the workday. The ALJ was not required to incorporate this second hypothetical because her RFC assessment did not include a finding that Plaintiff could only concentrate for 1/3 of the workday. The second hypothetical was, therefore, irrelevant to

17

Plaintiff disagrees, arguing that the Burns opinion foreclosed an ALJ's use of a hypothetical that describes claimant's limitations as "simple, unskilled and repetitive." Thus, he claims that the ALJ's question to the vocational expert "fails under the nebulous and universally rejected 'simple, repetitive tasks' evasion." (Pl.'s Br. 17, ECF No. 14.) But the quote upon which Plaintiff relies in Burns – "multiple limitations set out in a mental health RFC cannot be adequately explored in a hypothetical question which assumes the claimant can do simple repetitive one, two-step tasks" – does not exist. (Pl.'s Br. 13, ECF No. 14.) Nor can it be found in any other reported case. This is because, far from being "universally rejected," the phrase "simple, repetitive, unskilled" tasks has been upheld by the Third Circuit where it encompassed a claimant's limitations. Diaz v. Comm'r of Soc. Sec., 440 F. App'x 70, 72 (3d Cir. 2011) ("Diaz argues that . . . ALJ's hypothetical should have contained further limitations with regard to her ability to . . . maintain concentration. We disagree. . . The hypothetical here was premised on the ALJ's RFC assessment limiting Diaz's work to simple jobs involving occasional contact with supervisors, coworkers, and the public."); Najmi–Nejad v. Barnhart, 75 F. App'x 60, 64 (3d Cir. 2003) (noting that phrase "simple routine work" encompasses difficulties in "concentration, persistence, or pace."). This case law has not dissuaded Plaintiff's counsel from quoting this same invented passage, purportedly from Burns, before the Third Circuit on at least three occasions, each time invoking the language to argue that courts have universally rejected as inadequate hypothetical question using the phrase "simple, repetitive" tasks. Br. & App. for Pl.-

---

determining Plaintiff's status as not disabled. See Johnson v. Comm'r of Soc. Sec., 398 F. App'x 727, 736 (3d Cir. 2010) ("Johnson argues that the ALJ failed to explain why he considered the vocational expert's answer to only one of the two hypothetical questions presented . . . [the] ALJ's RFC assessment did not include [those limitations] . . . As a result, the second hypothetical, which included that restriction, was of no relevance."); Ochs v. Comm'r of Soc. Sec., 187 F. App'x 186, 191 (3d Cir. 2006) (finding additional hypothetical questions not based on RFC were "inconsequential . . . the ALJ simply covered all his bases in questioning the vocational expert.").

Appellant, Smith v. Comm'r of Soc. Sec., 631 F.3d 632 (3d Cir. 2010), No. 09–2983, 2010 WL 8546124, at *7, *12 ("simple one or two step tasks . . . has been rejected time and time again"); Br. & App. of Appellant, Valenti v. Comm'r of Soc. Sec., 373 F. App'x 255 (3d Cir. 2010), No. 09-2508, 2009 WL 8634444, at *38; Br. & App. for Pl.-Appellant, Diaz v. Comm'r of Soc. Sec., 440 F. App'x 70 (3d Cir. 2011), No. 10–4540, 2011 WL 9158174, at *13.  Counsel's argument has not been met with much success. Smith, 631 F.3d at 637 n.1 ("simple, routine, repetitive, one or two-step tasks" sufficiently incorporated the limitation that claimant had "difficulty with tasks of significant complexity, learning new tasks, or dealing with stress") (internal quotation marks omitted); Valenti, 373 F. App'x at 258 ("[Plaintiff] argues that the ALJ failed to incorporate physical limitations . . . and potential psychological restrictions . . . In this case, the ALJ posed a hypothetical that accurately reflected Valenti's limitations that he had determined had been established by the medical evidence."); Diaz, 440 F. App'x at 72 ("Diaz argues that . . . ALJ's hypothetical should have contained further limitations with regard to her ability to manage her own money, handle stress, and maintain concentration. We disagree . . . .").

The Court finds that Plaintiff's use of this nonexistent passage from Burns before this Court and the Third Circuit, misrepresented as a quote by being indented and single spaced,[5] was no formatting error.  Counsel shall cease and desist using this misquotation and this Court shall impose sanctions if it is ever used again here or in another court.

Because the ALJ included all related and medically supported findings from Steps Two through Four in her hypothetical to the vocational expert, the vocational expert's answers provide substantial evidence that there exists employment in the national economy suitable to

---

[5]  See also Pl.'s Br. 13, ECF No. 14 ("the Burns opinion effectively ends the suspense"); Pl.'s 9.1 Ltr., ECF No. 7 ("If you don't believe me, please believe the Third Circuit cases which I quoted verbatim.").

Plaintiff's limitations. (Tr. 18-21); Burns, 312 F.3d at 123.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is affirmed. An appropriate Order follows.

**/s/ Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**
